UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JOSEPH T. SCHOENBAECHLER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 24-159-DCR |
| ) | |
| V. ) | |
| ) | |
| GHSW ENTERPRISES, LLC, doing ) | **MEMORANDUM OPINION** |
| business as Strong Auto, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Joseph Schoenbaechler purchased a used truck from Strong Auto in June 2023, but its transmission failed within a month. He filed this suit alleging the defendants violated both state and federal law. [Record No. 1] Defendant GHSW Enterprises, LLC ("Strong Auto") argues in response that the plaintiff's claims are subject to the arbitration clause in the vehicle agreement contract. [Record No. 7] Defendant University of Kentucky Federal Credit Union ("UKFCU") asserted a Cross Claim against Strong Auto, arguing that their dealer agreement indemnifies UKFCU. [Record No. 6] Strong Auto filed a Motion to Compel Arbitration and Stay the proceedings between it and UKFCU pending the arbitration resolution. [Record No. 15] Defendant UKFCU does not oppose Strong Auto's motion. [Record No. 22] Strong Auto has also filed a counterclaim against the plaintiff for an unpaid deposit owed on the truck. [Record No. 7] And Schoenbaechler has submitted a Motion to Dismiss that counterclaim. [Record No. 14]

Because the contract contained a valid arbitration agreement, the Court will grant the Motion to Compel Arbitration and Stay. The plaintiff's Motion to Dismiss the Counterclaim

will be denied as moot because the unpaid truck deposit is within the scope of the arbitration clause.

### I. Background

Joseph Schoenbaechler and his wife drove two hours from Brandenburg, Kentucky to Strong Auto in Lexington to purchase a 2017 Nissan Titan XD to tow a trailer. [Record Nos. 1, 23-1]  The couple found the vehicle on the internet and contacted salesperson Jackie Allen. [Record No. 1]  Responding to their inquiry by email, Allen stated, "[t]he truck is in excellent condition no rust.  And we do not have any service records.  I can give you a copy of the auto history where the vehicles begin.  And we've totally serviced the truck and inspected it when we traded for it last week." *Id.*  Satisfied with Allen's representation regarding the condition of the truck, the couple along with their children arrived early on the morning of June 24, 2023, to test drive the vehicle.  [Record Nos. 1, 23-1]  Finding no apparent issues, the parties negotiated a purchase for $26,988, which included the trade-in value of the family's 2015 Jeep Wrangler. [Record No. 1]  Ultimately the amount the Schoenbaechlers financed through the UKFCU was $32,578.87. *Id.*

As part of the purchase, the plaintiff signed a vehicle agreement which contained this arbitration clause above the signature line:

> BUYER AND SELLER AGREE THAT INSTEAD OF LITIGATION IN COURT, ANY DISPUTE, CONTROVERSY, OR CLAIM RELATING IN ANY WAY TO THE SALE, LEASE, FINANCING, SERVICING, OR PERFORMANCE OF THIS VEHICLE, TO THIS AGREEMENT (OR BREACH THEREOF), OR TO THE NEGOTIATIONS AND AGREEMENTS LEADING TO THIS TRANSACTION, OR TO ANY DOCUMENTS RELATING TO THIS TRANSACTION (INCLUDING THE RETAIL INSTALLMENT CONTRACT OR LEASE AGREEMENT) SHALL BE SETTLED BY FINAL BINDING ARBITRATION ACCORDING TO THE FEDERAL ARBITRATION ACT AND ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION UNDER ITS COMMERCIAL

ARBITRATION RULES, SUCH ARBITRATION SHALL BE CONDUCTED IN THE COUNTY IN WHICH THE DEALERSHIP IS LOCATED, EACH PARTY SHALL PAY ITS OWN COSTS, JUDGMENTS AWARDED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF ONLY IF AGREEABLE TO BOTH PARTIES, AND ALTERNATIVE FORM OF ARBITRATION MAY BE CHOSEN.

[Record No. 15-1]  By the time the plaintiff signed this agreement, his family had been at Strong Auto for hours.  [Record No. 23-1]  He was directed to "sign there, sign here" repeatedly as sales associate Allen flipped through the documents.  [Record No. 23]  All told, the family was at the dealership for roughly five to six hours.  [Record No. 23-1]  Plaintiff was never provided a copy of the vehicle agreement and only received it after his attorney contacted counsel for Strong Auto.  [Record No. 28-1]

The family drove the truck back to Brandenburg that same evening with no issues. However, the next day, the warning lights appeared on the dash.  [Record No. 1]  The plaintiff contacted Allen at Strong Auto asking to bring the truck back to be inspected.  *Id.*  He was informed that there was nothing that Strong Auto could do to remedy the situation.  *Id.*  The following day, he took the truck to Auto Zone to scan for codes which revealed ones related to the transmission.  *Id.*

The truck was purchased, in part, to haul a trailer the Schoenbaechlers planned to pick up in Jeffersonville, Indiana.  *Id.*  When the plaintiff started the truck three days after the codes appeared, the engine light was not on.  *Id.*  Despite the prior error codes, the plaintiff left to retrieve the trailer.  *Id.*  Roughly four miles down the road, the lights reappeared, but because the truck was performing normally, Schoenbaechler continued with the trip.  *Id.*  Things changed on the way home while towing the trailer as the truck began to shift gears erratically. *Id.*

The following day, Schoenbaechler brought the truck back to Auto Zone, and a scan revealed the same codes. *Id.* He then made an appointment for July 12, 2023, with Brandenburg Auto Clinic, but continued to drive the vehicle during that time. *Id.* After inspecting the truck, Brandenburg Auto Clinic informed the plaintiff that the transmission had been "deleted and tuned," which caused "irreparable damage" to the transmission. *Id.* The plaintiff immediately stopped driving the truck. *Id.*

After returning the vehicle several months later to obtain a quote for repairs, the Brandenburg Auto Clinic informed the plaintiff that the truck's exhaust system had been removed and replaced with a straight pipe; therefore, the transmission could not be replaced because it had been deleted and if reprogrammed it would not work because of the missing emission components. [Record No. 1-3] Before the transmission could be replaced, all the exhaust components would need to be restored with original equipment manufacturer parts. *Id.* The Auto Clinic informed plaintiff that the truck's removed emission components violated federal law. *Id.* Therefore, the plaintiff stopped using the truck because it was illegal to operate. [Record No. 23-1] Schoenbaechler continues to pay his monthly obligation to the UKFCU despite his inability to use the truck. *Id.*

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "manifests a liberal policy favoring arbitration agreements." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). When a party is aggrieved by another party's failure to arbitrate in accordance with a written agreement to do so, that party "may petition a federal court for an order directing that such arbitration proceed in the manner provided for" by the contract. *Rent-A-Center, W., Inc.*

*v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4). The FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* at 67.

When considering a motion to compel arbitration under the FAA, a court has four tasks. It must: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the agreement; (3) if federal statutory claims are asserted, consider whether Congress intended those claims to be non-arbitrable; and (4) if the court concludes that some, but not all, of the claims are subject to arbitration, determine whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

In determining whether the parties agreed to arbitrate, the court examines arbitration language in a contract considering the strong federal policy in favor of arbitration and resolves any doubts about the parties' intentions in favor of arbitration. *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006). Despite the strong policy in its favor, arbitration under the FAA is "a matter of consent, not coercion." *Volt Info. Scis., Inc.. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Although ambiguities in the language of the agreement will be resolved in favor of arbitration, the clear intent of the parties will not be overridden simply because the policy favoring arbitration is implicated. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

"Federal courts analyze motions to compel arbitration under different procedural standards, including Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Fed. R. Civ. P. 56 for summary judgment, depending upon the facts and posture of the case." *BLC Lexington, LLC v. Craig*, 2020 WL 4721240, at *4 (E.D. Ky. Aug. 13, 2020) (citing *Powers v. Charles River Labs., Inc.*, 2017

WL 4324942, at *4 (E.D. Mich. Sept. 29, 2017). When resolving motions to compel arbitration, courts apply the summary judgment standard under Rule 56 of the Federal Rules of Civil Procedure particularly when the parties submit matters beyond the pleadings. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *FCCI Ins. Co. v. Nicholas Cnty. Libr.*, No. 5:18-CV-038-JMH, 2019 WL 1234319, at *4 (E.D. Ky. Mar. 15, 2019).

### III. Analysis

In the present case, the parties do not dispute that the FAA and Kentucky law govern the validity of the arbitration clause. However, they disagree regarding whether they had an agreement to arbitrate, and if they did, whether any defenses apply. Strong Auto argues that there was an agreement because: (1) the plaintiff knowingly and voluntarily signed the vehicle agreement containing the arbitration clause; (2) the clause is clear, conspicuous, and in all caps right above the signature line; and (3) under Kentucky and federal law, any doubts must be resolved in favor of arbitration. [Record No. 15] Conversely, Schoenbaechler contends that (1) he had no meaningful opportunity to read or review the vehicle agreement containing the arbitration clause; (2) the arbitration clause is unconscionable; (3) the absence of any reference to "jury" in the arbitration clause means the plaintiff did not knowingly waive his constitutional right to a jury trial; (4) the agreement between the parties was a contract of adhesion; and (5) Strong Auto assigned all its rights under the contract to UKFCU. [Record No. 23] As noted above, because the parties have submitted matters beyond the pleadings, the summary judgment standard applies.

**Whether the Parties Agreed to Arbitrate**

In determining whether parties have agreed to arbitrate a certain matter, courts apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago,*

- 6 -

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "It is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions." *Hathaway v. Eckerle*, 336 S.W.3d 83, 89–90 (Ky. 2011) (quoting *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959)). This is "applied even to contracts of illiterate persons on the ground that if such persons are unable to read" or understand the contract, they a duty to have it read and explained to them before it is signed. *Clark*, 329 S.W.2d at 386–87.

To be enforceable, a contract "must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Ky. Indus. Hemp, LLC v. Teterboro Partners, LLC*, 2021 WL 4993481, at *3 (E.D. Ky. Oct. 27, 2021). For arbitration agreements, essential terms include "the arbitration process, the scope of the agreement, and responsibility for costs." *Id.* In considering the validity of an arbitration clause that is part of a larger contract, the court examines the arbitration provision itself rather than the parties' entire agreement. *See Moran v. Svete*, 366 F. App'x 624, 630 (6th Cir. 2010) (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)). Both the FAA and Kentucky law require arbitration agreements to be written, but they need not be signed. *See* 9 U.S.C. § 2; *Seawright v. Am. Gen. Fin. Servs.*, 507 F.3d 967, 978 (6th Cir. 2007); *Dixon v. Daymar Colleges Grp.*, LLC, 483 S.W.3d 332, 343 (Ky. 2015).

The party seeking to compel arbitration has the initial burden to show a valid arbitration agreement exists. *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). And once this is accomplished, the burden shifts to the party attempting to avoid the agreement. *Id.* Ordinary state law defenses to contract formation such as fraud, duress, and unconscionability apply to contested arbitration clauses. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir.

2002) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. *See Great Earth Cos.*, 288 F.3d at 889. If the court finds that the validity of the arbitration agreement is " in issue," the matter must proceed to trial to resolve the question. *Id.*

As Strong Auto notes, the text of the arbitration clause is in all caps and directly above the signature line that plaintiff signed. [Record No. 15-1] The clause covers the essential terms for a valid arbitration agreement including the process, scope, and cost allocation. *Id.*; *Ky. Indus. Hemp, LLC v. Teterboro Partners, LLC*, 2021 WL 4993481, at *3 (E.D. Ky. Oct. 27, 2021). The defendant has met its burden, which evidences that a valid arbitration agreement existed.

### Unconscionability Defense

Courts allow an unconscionability defense as a way to "police the excess[] of certain parties who abuse their right to contract freely." *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (citations omitted). It aims to challenge "one-sided, oppressive and unfairly surprising contracts," and not the "consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* (citations omitted). Unconscionable contracts are ones that "no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Id.* (citations omitted).

Under Kentucky law, there are two forms of unconscionability: substantive and procedural. Substantive unconscionability pertains to the contract terms being "unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* at 348 (citations omitted)   To make this determination, courts consider "the commercial

reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.*

Procedural unconscionability, also referred to as "unfair surprise," involves the "'process by which an agreement is reached and the form of an agreement' including fine print, convoluted or unclear language, boilerplate, terms which might not normally be expected." *Green v. Frazier*, 655 S.W.3d 340, 346 (Ky. 2022) (quoting *Schnuerle v. Insight Commc'ns Co.*, L.P., 376 S.W.3d 561, 576 (Ky. 2012)). For this analysis, courts consider the "bargaining power of the parties, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Id.*

### Substantive Unconscionability

The plaintiff argues that the arbitration clause is substantively unconscionable, but that argument is foreclosed under *Hathaway v. Eckerle*, 336 S.W.3d 83 (Ky. 2011). Unfortunately for Schoenbaechler, the arbitration clause in *Hathaway* is identical (except for a typo)[1] to the one Strong Auto used in its vehicle agreement. In *Hathaway* the plaintiff argued that the clause was unconscionable because "(1) the arbitration clause prevents her from recovering 'costs'; (2) the arbitration clause is one-sided and is one of adhesion; and (3) she was not told by Commonwealth Dodge the implications of signing the vehicle purchase agreement or the

---

[1] While punctuation matters, this typo does not change the outcome for plaintiff. The clause in *Hathaway* provides: "JUDGMENTS AWARDED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. ONLY IF AGREEABLE TO BOTH PARTIES, AN ALTERNATIVE FORM OF ARBITRATION MAY BE CHOSEN." The clause in the vehicle agreement states: "JUDGMENTS AWARDED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF ONLY IF AGREEABLE TO BOTH PARTIES, AND ALTERNATIVE FORM OF ARBITRATION MAY BE CHOSEN."

arbitration clause." *Id.* at 88. The Supreme Court of Kentucky ruled in favor of the car dealership finding that the arbitration clause was not unconscionable. *Id.* at 90.

The plaintiff in *Hathaway* had an argument that mirrored Schoenbaechler's regarding the clause's cost allocation. The court read the provision "EACH PARTY SHALL PAY ITS OWN COSTS" as merely a reference to the general rule that each party pay its own litigation costs. *Id.* at 88–89. It further referenced the American Arbitration Association's Commercial Arbitration Rules,[2] which authorize broad discretion for the arbitrator to grant any remedy and to consider the costs, expenses, and fees paid by the parties. *Id.* Because the arbitrator maintained the authority to allocate the award, the court did not find the clause unconscionable. *Id.* The same goes for Schoenbaechler's argument that the expenses he faces to arbitrate renders the arbitration clause unconscionable. As of now, there is no precedent under Kentucky law finding an arbitration agreement unconscionable because of the expense to one party.

Much like Schoenbaechler, the plaintiff in *Hathaway* argued the arbitration clause was unconscionable because she was never told it would result in her waiving her right to a jury trial. *Id.* at 89. The court reiterated that a person who signs a contract is presumed to know its contents and determined her invalid waiver argument lacked merit. *Id.* at 89–90. Schoenbaechler also argues that the clause is "unreasonably or grossly favorable" to Strong Auto, but the clause requires *both* parties' disputes to be arbitrated. This is true for Strong Auto's counterclaim for the deposit it alleges Schoenbaechler owes, as well as plaintiff's

---

[2] The rules in effect currently are identical to those cited in *Hathaway*. See American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures (Sept. 1, 2022), R-49 Scope of Award, CommercialRules_Web_1.pdf (last visited Nov. 23, 2024).

claims. Further, there is "no inherent reason to require that the parties have equal arbitration rights." *Id.* at 89 (quoting *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 343 (Ky.App.2001)); *see also Grimes v. GHSW Enterprises, LLC*, 556 S.W.3d 576, 582 (Ky. 2018).

### Procedural Unconscionability

The plaintiff alleges that he lacked an opportunity to read the vehicle agreement because it was merely handed to him with instructions to "sign there, sign here," and "by the time he was presented with . . . any documents to execute, he was so mentally and physically exhausted and, due to the intentional delay caused by Strong, was under so much duress that human nature took hold where he signed them all and just wanted to get out of there and go home." [Record No. 23] This allegation is somewhat supported by the vehicle agreement, which contains a blank signature line in the box titled "Disclaimer of Warranties." It is possible that Allen intentionally skipped this signature line that directly above it says, "I have read and received a copy of this Vehicle Agreement and (if applicable) the Buyer's Guide, and I understand their content fully." [Record No. 15-1] But it could also be that, as Schoenbaechler says, he was presented with the documents and hurriedly told where to sign.

However, even if it were true that Schoenbaechler was rushed through the process and told where to sign, Kentucky law is unequivocal that a person who signs a contract is presumed to have read its content if given an opportunity to read it. *Hathaway v. Eckerle*, 336 S.W.3d 83, 89–90 (Ky. 2011) (quoting *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959)). Schoenbaechler does not allege that Strong Auto prevented him from reading the vehicle agreement before he signed it. He only recites the hours he was made to wait and the voluminous paperwork he was given to sign. But being tired and worn down by used car

dealership sales tactics does not negate the fact that he had an opportunity to read the vehicle agreement. While it is concerning to the undersigned that the signature line under the "Disclaimer of Warranties" section was left blank, the effect, if any, of that omission is properly within the arbitrator's scope to resolve.

Schoenbaechler next argues that the vehicle agreement was a contract of adhesion and therefore unconscionable. However, even if it were a contract of adhesion, Kentucky law does not recognize such "contracts containing arbitration agreements as *per se* procedurally unconscionable." *Triple Crown Holdings, LLC v. Lowe's Home Centers, LLC*, No. 5:19-CV-00057-JMH, 2019 WL 3321725, at *4 (E.D. Ky. July 24, 2019) (citing *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012)).

The Court does not find merit in the plaintiff's argument that Strong Auto assigned all its rights under the vehicle agreement to UKFCU. Therefore, it has no remaining right to compel arbitration. The vehicle agreement notified Schoenbaechler that he had the right to arrange his own financing for the truck purchase. [Record No. 15 -1] Strong Auto's assistance in arranging financing does not constitute an assignment of all its rights under the vehicle agreement.

**Remaining Considerations**

The parties do not contest that the scope of the arbitration clause does not cover the claims between them. The Court finds that the language defining the scope, "ANY DISPUTE, CONTROVERSY, OR CLAIM RELATING IN ANY WAY TO THE SALE, LEASE, FINANCING, SERVICING, OR PERFORMANCE OF THIS VEHICLE," is sufficiently broad to cover Schoenbaechler's claims against Strong Auto under state and federal law. [Record No. 15-1] Similarly, Strong Auto's counterclaim for the $1,800 deposit it says the

plaintiff never paid is also within the scope of the agreement. [Record No. 7]  The plaintiff does not allege and the Court does not find that Congress intended the federal claims asserted to be non-arbitrable.  Instead, the undersigned concludes that the claims between Schoenbaechler and Strong Auto are subject to arbitration, but the claims between UKFCU and Strong Auto and UKFCU and Schoenbaechler are not.  As a result, those additional claims will be stayed pending resolution of the arbitration proceedings.

### IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED**

1.  Defendant GHSW Enterprises, LLC's Motion to Compel Arbitration and Stay [Record No. 15] is **GRANTED**.

2.  Plaintiff Joseph Schoenbaechler's Motion to Dismiss the Counterclaim [Record No. 14] is **DENIED** as **MOOT**.

3.  The remaining claims involving the University of Kentucky Federal Credit Union are **STAYED** pending arbitration.

4.  The parties are directed to file a status report with the Court regarding the progress of arbitration commencing in sixty days and submit additional reports each sixty days thereafter until arbitration proceedings are complete.

Dated: November 25, 2024.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky